# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| PETER PEDERSEN, § § § Plaintiff, § § v. § § ZOHO CORPORATION, § § Defendant. § § | Civil Action No. 6:22-cv-00408-ADA |

# DEFENDANT ZOHO CORPORATION'S MOTION TO DISMISS
# PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

**TABLE OF CONTENTS**

I. INTRODUCTION ...........................................................................................................1

II. FACTUAL BACKGROUND .........................................................................................1

   A. The Claimed Invention of the '920 Patent ...............................................................1

   B. Pedersen's Statements During Prosecution of the '920 Patent ...............................3

   C. The Accused Zoho Campaigns Service ..................................................................4

III. LEGAL STANDARD .....................................................................................................6

IV. PEDERSEN FAILS TO PLAUSIBLY ALLEGE DIRECT INFRINGEMENT OF THE INDIVIDUAL MESSAGE GENERATOR LIMITATION .......................................7

V. CONCLUSION ..............................................................................................................11

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................... 6

*Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342 (Fed. Cir. 2021) ........................................... 7, 11

*Chauhan v. Formosa Plastics Corp.*, 212 F.3d 595, 2000 WL 423367 (5th Cir. 2000) ................ 7

*Grecia Est. Holdings LLC v. Meta Platforms, Inc.*, No. 6:21-CV-00677-ADA, 2022 WL 2019296 (W.D. Tex. June 6, 2022) ............................................................................ 7, 8, 10, 11

*Iron Oak Techs., LLC v. Acer Am. Corp.*, No. 6:17-CV-00143-RP-JCM, 2017 WL 9477677 (W.D. Tex. Nov. 28, 2017) ........................................................................................................ 8

*Lewkut v. Stryker Corp.*, 724 F. Supp. 2d 648 (S.D.Tex.2010) ...................................................... 7

*Ruiz v. Brennan*, 851 F.3d 464 (5th Cir. 2017) .............................................................................. 7

*Uniloc USA, Inc. v. ADP, LLC,* 772 F. App'x 890 (Fed. Cir. 2019) ............................................... 7

*Vervain, LLC v. Micron Tech., Inc.*, No. 6:21-CV-00487-ADA, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022) ................................................................................................................................ passim

Defendant Zoho Corporation ("Zoho") moves to dismiss Plaintiff Peter Pedersen's ("Pedersen") Complaint under Federal Rule of Civil Procedure 12(b)(6), alleging direct infringement of U.S. Patent No. 6,965,920 (the "'920 patent"). Dkt. 1.

## I. INTRODUCTION

Pedersen's complaint against Zoho is materially deficient.  The Complaint recites infringement allegations that directly contradict statements Mr. Pedersen made to the Patent Office during prosecution.  In particular, Pedersen advances infringement positions against Zoho that contravene prior representations he made to the Patent Office to overcome prior art rejections with respect to the claimed limitations.  The prior art system that Pedersen told the Patent Office was outside the scope of his claims operates much the same as Pedersen alleges Zoho's accused product operates.  Thus, Pedersen's infringement allegations against Zoho are implausible on their face and should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

## II. FACTUAL BACKGROUND

### A. The Claimed Invention of the '920 Patent

The '920 patent, entitled "Profile Responsive Electronic Message Management System," issued on November 15, 2005.  It describes and claims a message management system for distributing messages from messengers to recipients and a method of inputting data into such a system. Dkt. 1-1 at Ex. A.  Claim 1 of the '920 patent—the only claim for which the Complaint provides any factual allegations about infringement—is directed to "an electronic management system" with the components recited below. Dkt. 1, ¶ 17, 21-22; Dkt. 1-1, Exhibit B.

> 1. An electronic message management system comprising:
>
>> an electronic computer system in operative communication with a global digital communications network, and an electronic message management

1

>> database in operative communication with the computer system; the electronic computer system having
>
>> > a recipient profile application for receiving recipient profile data from recipients via the global network and storing the recipient data in the database, the profile data including delivery parameters specified by a recipient of where, when and how specific types of messages from specific messengers are delivered to the recipient,
>> >
>> > a messenger profile application for receiving messenger profile data from messengers via the global network and storing the messenger data in the database, including messenger identifying data,
>> >
>> > a message input application for receiving message files from a messenger via the global network and storing the message files in the database, and
>> >
>> > **an individual message generator in communication with the database and operative to access and utilize data and files from the database to generate an individual message to be sent to the recipient specified by the messenger** via the global communications network according to the delivery parameters, and a message management server operating system; and
>
>> the message management database including recipient and messenger profile databases for storing recipient and messenger profile data respectively, and a message database for storing message data files.

'920 patent at 11:19-50 (claim 1) (emphasis added).[1]  As shown above, claim 1 requires the receipt and storage of recipient profile data from recipients and messenger profile data from messengers.  The stored data is used by the individual message generator to generate an individual message to be sent to a recipient specified by the messenger and based on compatible recipient and messenger data stored in the database.  *See also* '920 patent at 3:48-52 ("The individual message generator of the message management system communicates with the databases to identify messages and messenger parameters that are compatible with a recipient profile . . . .").

---

[1] For convenience, this emphasized limitation is referred-to as the "Individual Message Generator Limitation" throughout.

### B. Pedersen's Statements During Prosecution of the '920 Patent

During prosecution, the examiner rejected the Individual Message Generator Limitation as being disclosed in U.S. Patent No. 6,047,310 ("Kamakura") (Haack Decl., Ex. 1):

> an individual message generator (23, fig. 3) in communication with the database (sends an inquiry composed of retrieval expressions to the database; col. 12, lines 61-65) and operative to access and utilize data and files from the database to generate an individual message to be sent via the global communications network to a recipient specified by a messenger (col. 7, lines 40-65; col. 12, lines 39-65).

*See* Haack Decl., Ex. 2 at 6-7 (Feb. 10, 2005 Office Action at pages 4-5).  The Kamakura system is directed to matching advertisement transmission attributes specified by receivers with advertisement categories provided by the senders.  *See, e.g.,* Haack Decl., Ex. 1 at Abstract.  The Kamakura system includes a "distribution host computer 11 [that] determines distributees of the advertisement information corresponding to the advertisement reception requirement 22 [of receivers] and the advertisement transmission requirement 34 [of senders] and generates the distribution list 25 [of receivers]." *Id.*, 7:40-46.  The sender "selects attribute information and categories so as to narrow the selection of receivers (at step S54)" and then "the distribution list generating portion 23 retrieves advertisement reception requirements 22 [of receivers] with aggregate expressions composed of the item being selected and generates a distribution list 25 (shown in FIG. 15) including receiver IDs corresponding to the retrieval conditions (at step S55)." *See id.* at 12:54-60.

In response to the rejection, Pedersen confirmed that his claimed "individual message generator" was different from the Kamakura system because the claimed system must generate an individual message to be sent "to a recipient *specified by a messenger*," rather than a recipient generated by the message management system:

> Another limitation of instant claim 1 is an "individual message generator. . . to generate an individual message to be sent. . . to a recipient ***specified*** by a messenger." Emphasis added. ***To the contrary, in a combination of Kamakura***

3

> ***and Capps (even if successfully combined) the sender transmits its message to the apparatus; it is the apparatus that designates the receiver of the message.***

*See* Haack Decl., Ex. 2 at 26 (May 27, 2005 Response at page 11) (second emphasis added). The Kamakura system, according to Pedersen, "receives a message from a single sender and sends the message out to a plurality of receivers . . . based on a match between a receiver's profile and the message's profile." *Id.* at 23 (May 27, 2005 Response at page 8). "In contrast," per Pedersen, the claimed invention "receives a message sent to a specific (as opposed to a non-specific) receiver, and selects which of that individual receiver's 'mail boxes' to sort the message into." *Id.* According to Pedersen, the claimed invention "cannot relay a received message on to a plurality of non-specific receivers," like those based on the profile matches of Kamakura. *Id.*

In sum, in Pedersen's claimed system, the sender (messenger) cannot send its message to the system for the system to then designate a recipient for the message. Rather, the recipient of the generated message must be specified directly by the messenger (sender).

      **C.**     **The Accused Zoho Campaigns Service**

Pedersen accuses Zoho's Campaigns software application of directly infringing the electronic message management system of claim 1. Dkt. 1-1, Ex. B. Zoho Campaigns is a tool that enables users to create, design, automate, test and analyze email marketing campaigns and related workflows. Haack Decl. Ex. 3, 4. The application allows Zoho Campaigns users to create forms for a customer website (Haack Decl., Ex. 5); Campaigns can also generate target lists of customers based on customer segments based on user-supplied interests or behavior, including based on the website forms. Haack Decl., Exs. 6-9.

For the Individual Message Generator Limitation, Pedersen alleges that "Zoho's Campaigns application generates individual messages that are sent to a specific email address or

4

an SMS number associated with each particular recipient." Dkt. 1-1, Ex. B at 12. In full, Pedersen's allegations for the limitation are:

> Each messenger's Zoho Campaigns account is configured to communicate via the internet with Zoho's web servers that perform Zoho's services. *See* "Zoho Campaigns" and "Zoho CRM" at https://status.zoho.com/.
>
> Based on delivery parameters associated with a particular recipient, Zoho's Campaigns **application generates individual messages that are sent to a specific email address or an SMS number associated with each particular recipient**. *See* https://www.zoho.com/marketingautomation/multi-channel-marketing/smsmarketing.html.
>
> Additionally, see Figs. 12-14 below, which illustrate an example of Zoho Campaigns's Segment Criterias together with the Segment selection for controlling the distribution of Email and SMS Messages. Also, Fig. 15 shows one individual email as part of the result of the segment selections and the campaign sent.

*Id.* (emphasis added). Pedersen alleges that the Zoho Campaigns software generates and specifies a target list of email recipients matching a set of conditions defined by a Zoho customer—a "segment." But nowhere does Pedersen allege that those email addresses are "specified by the messenger" as required by the claims.

Pedersen also references screenshots of Zoho Campaigns showing editing a segment (Fig. 12), selecting a segment for a campaign (Fig. 13), options for sending SMS messages for a campaign (Fig. 14), as well as a screenshot purportedly of an email received from Zoho Campaigns (Fig. 15). Dkt. 1-1, Ex. B at 13-15. None of these figures supports an allegation that Zoho Campaigns allows a user (i.e., a messenger) to specify a message to be sent to a particular recipient. Indeed, as Figure 12 from the claim chart shows, accused Zoho system is similar to Kamakura in that the user selects criteria relating to message recipients, not recipients themselves.



*See id.* at 13 (showing that the criteria for the campaign is that it is sent on "monday," that the recipients' interests include "promotions," and that the message will be sent via "email".)

**III.    LEGAL STANDARD**

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is warranted if the plaintiff has failed to allege sufficient facts to "state a claim to relief that is plausible on its face." *Vervain, LLC v. Micron Tech., Inc.*, No. 6:21-CV-00487-ADA, 2022 WL 23469, at *1 (W.D. Tex. Jan. 3, 2022) (Albright, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility standard requires that the complaint contain "'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' based on 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* (quoting *Ashcroft*, 556 U.S. at 678). Factors considered in determining whether a claim for patent infringement meets this standard include "the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Id.* at *2 (quoting *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021)).

In ruling on a Rule 12(b)(6) motion, a court considers the contents of the pleadings and attachments and may take judicial notice of matters of public record. *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017); *see also Lewkut v. Stryker Corp.*, 724 F. Supp. 2d 648, 653 n.1 (S.D.Tex.2010) (citing *Chauhan v. Formosa Plastics Corp.*, 212 F.3d 595, 2000 WL 423367, at *1 (5th Cir. 2000)). While factual allegations are construed in the light most favorable to the nonmoving party, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Grecia Est. Holdings LLC v. Meta Platforms, Inc.*, No. 6:21-CV-00677-ADA, 2022 WL 2019296, at *2 (W.D. Tex. June 6, 2022) (Albright, J.) (citation omitted); *see also Vervain*, 2022 WL 23469, at *2 ("Under any standard, however, the complaint must support its entitlement to relief with 'factual content,' not just conclusory allegations that the accused product(s) meet every claim limitation." (citing *Bot M8*, 4 F.4th at 1353)).

It is appropriate to take judicial notice of the intrinsic record (including the prosecution history) of an asserted patent and consider it in a dismissal motion at the pleadings stage. *See Uniloc USA, Inc. v. ADP, LLC,* 772 F. App'x 890, 898 n.3 (Fed. Cir. 2019) ("The prosecution history is part of the intrinsic record of the patent" and "thus subject to judicial notice and may be considered in our de novo review of the district court's" ruling on a motion to dismiss); *Grecia*, 2022 WL 2019296, at *6 (finding that communications with the Patent Office are a matter of public record subject to judicial notice and "appropriate for this Court to consider at the pleading stage."); *Vervain*, 2022 WL 23469, at *5 (taking judicial notice of prosecution history of an asserted patent in deciding motion to dismiss).

**IV.    PEDERSEN FAILS TO PLAUSIBLY ALLEGE DIRECT INFRINGEMENT OF THE INDIVIDUAL MESSAGE GENERATOR LIMITATION**

A direct infringement claim under 35 U.S.C. § 271(a) "require[s] a showing that 'each and every limitation set forth in a claim appears in the accused product.'" *Iron Oak Techs., LLC*

7

*v. Acer Am. Corp.*, No. 6:17-CV-00143-RP-JCM, 2017 WL 9477677, at *3 (W.D. Tex. Nov. 28, 2017) (citation omitted). Here, the Complaint fails to state a plausible infringement allegation because Pedersen's allegations in support of the claim that Zoho Campaigns infringes the '920 patent directly contradict statements Petersen made to the Patent Office during prosecution about the Individual Message Generator Limitation. *See Grecia*, 2022 WL 2019296, *6.

The plain language of claim 1 requires that the individual message generator "generate an individual message to be sent to the recipient specified by the messenger." Dkt. 1-1, Ex. A, claim 1. During the prosecution of the '920 patent, Pedersen emphasized that this limitation was novel over the Kamakura prior art system. The examiner first rejected the limitation because Kamakura described an apparatus that includes a "distribution host computer 11 that determines distribution of the advertisement information corresponding to the advertisement reception requirement 22" by "generat[ing] a distribution list 25 (shown in FIG. 15) including receiver IDs corresponding to the retrieval conditions (at step S55)" based on the sender's "select[ion] [of] one of the categories" that match "advertisement reception requirements 22 of receivers with a key of the selected category." Haack Decl., Ex. 2 at 7 (Feb. 10, 2005 Office Action at page 5) (explaining that the Individual Message Generator Limitation was obvious over Kamakura at "col. 7, lines 40-65; col. 12, lines 39-65"); Haack Decl., Ex. 1 at 7:40-65, 12:39-65. To overcome that rejection, Pedersen explained that Kamakura was distinguishable because it was "the apparatus [of Kamakura] that designates the receiver of the message," whereas claim 1 of the '920 patent required the receiver of the message be "specified by a messenger," not the apparatus. *See* Haack Decl., Ex. 2 at 26 (May 27, 2005 Response at page 11). Put another way, a messenger's selection of reception categories for recipients that the system then uses to

8

generate a list of recipients—as in Kamakura—was distinct from the messenger specifying a recipient, as claimed in the '920 patent.

Yet in alleging infringement against the Zoho Campaigns service, Pedersen seeks to recapture precisely what he disclaimed to obtain the '920 patent, contending that the electronic message management apparatus can designate the receivers of the messages based on criteria selected by a messenger. In the Complaint, Pedersen alleges that the Zoho Campaigns software "generates individual messages that are sent to a specific email address or an SMS number associated with each particular recipient." Dkt. 1-1, Ex. B at 12. But the Complaint does not allege that the message sender (the Zoho user creating an email campaign) specifies the email address or SMS number. In fact, Pedersen admits that "Campaigns's Segment Criterias together with the Segment selection" are "for controlling the distribution of Email and SMS Messages." *Id.*

That is, Pedersen alleges that the system itself selects recipient email addresses or SMS numbers based on the Segment criteria selected by the Zoho Campaigns user. Pedersen does not, and cannot, allege that the Zoho Campaigns user (*i.e.*, the alleged "messenger") directly specifies the recipient for a message, as recited in claim 1 and emphasized during prosecution. Nothing in the Complaint supports an allegation that there is an option for directly addressing a particular recipient and the screenshots of the Zoho Campaigns application included in the claim chart show only options for creating segments of recipients based on various criteria. *See* Dkt. 1-1, Ex. B, Figs. 12-14 (showing options to address a message by Segment).

Dismissal is warranted where, as here, Pedersen's allegations against Zoho fail to articulate a plausible theory of infringement consistent with the admitted scope of his invention. *See Grecia*, 2022 WL 2019296, at *6 (holding that a plaintiff-patentee "cannot plausibly allege

infringement" where it "contradict[s] prior sworn statements [made to the patent office] concerning the invention's scope"); *Vervain*, 2022 WL 23469, at *8-9 (dismissing complaint where the prosecution history reflects that a limitation was "critical to the issuance" of the claims and allowed the claims "to pass to allowance" but where the complaint only pointed to accused elements without offering plausible allegations that the elements perform the relevant limitations).

That Pedersen's infringement allegations require this rewrite of the claims is apparent: the Complaint contends that Zoho Campaigns operates like the Kamakura prior art system that Pedersen disclaimed from his invention. As discussed above, Kamakura generates a distribution list of receivers for advertising messages corresponding to categories selected by senders by matching the "advertisement reception requirements 22 of receivers" with a selected category. Haack Decl., Ex. 1 at 12:39-65; *see also* Haack Decl., Ex. 2 at 7 (Feb. 10, 2005 Office Action at page 5) (citing to Kamakura, col. 12, lines 39-65 to reject the individual message generator limitation of claim 1). Similarly, Pedersen alleges that Zoho users use "Segment selection for controlling the distribution of Email and SMS Messages." Dkt. 1-1, Ex. B at 12.

The creation of segments by Zoho users for the system to use in generating a target group of recipients that match the segment conditions (alleged to be infringing by Pedersen) is like the key functionality of the Kamakura system, which uses the selection of categories by senders to generate a distribution list of matching receivers. And because Pedersen distinguished the Kamakura functionality as outside the scope of claim 1, he cannot now reclaim the same functionality in litigation to allege infringement of the same claim against Zoho. *See Grecia*, 2022 WL 2019296, at *6 (dismissing infringement allegations that contradict statements made to the patent office). Thus, Pedersen's infringement allegations fail to plausibly state a claim for

direct infringement against Zoho Campaigns. *See Bot M8*, 4 F.4th at 1346 ("[A] patentee may subject its claims to early dismissal by pleading facts that are inconsistent with the requirements of its claims."); *Vervain*, 2022 WL 23469, *5 (granting motion to dismiss because patent infringement allegations did not show the accused product met a material claim limitation).

## V. CONCLUSION

Accordingly, Zoho asks this Court to grant its Motion to Dismiss Pedersen's claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: September 26, 2022                Respectfully submitted,

By:   /s/ *Darryl J. Adams*
Ryan Marton (admitted *pro hac vice*)
ryan@martonribera.com
Hector Ribera (admitted *pro hac vice*)
hector@martonribera.com
Carolyn Chang (admitted *pro hac vice*)
carolyn@martonribera.com
Phillip Haack (admitted *pro hac vice*)
phaack@martonribera.com
MARTON RIBERA SCHUMANN & CHANG LLP
548 Market Street, Suite 36117
San Francisco, CA 94104
Telephone:  (415) 360-2515

Darryl J. Adams (TX Bar No. 00796101)
dadams@sgbfirm.com
SLAYDEN GRUBERT BEARD PLLC
401 Congress Ave., Suite 1650
Austin, TX 78701
Tel: 512.402.3550
Fax: 512.402.6865

*Attorneys for Defendant Zoho Corporation*

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing is being served on the counsel of record via the CM/ECF system on September 26, 2022.

Dated: September 26, 2022              */s/ Darryl J. Adams*
                                                             Phillip J. Haack